UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAKARAIEL IKHANA TAHUTI,

    *Plaintiff*,

v.

UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,

    *Defendants*.

Civil Action No. 24-2003 (RDM)

## MEMORANDUM OPINION

    Plaintiff Dakaraiel Ikhana Tahuti, proceeding *pro se*, brings this action against the United States Department of Commerce, Secretary of Commerce Gina Raimondo, the United States Census Bureau, and the United States (collectively "Defendants"). A little over four months after Plaintiff filed suit, Plaintiff filed an amended complaint, which purports to assert claims under the Alien Tort Statute, 28 U.S.C. § 1350, and the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, the law of nations, the treaties of the United States, customary international law, and common law. Dkt. 7 (Am. Compl.). Although the factual basis for Plaintiff's claims is difficult to discern, it appears that he contends that the Census Bureau incorrectly classified his racial and ethnic identity as "Black," even though he is "an American aborigine Arawak descendant" and is thus "a foreigner to United States citizenship" and "a beneficiary of the Maipuri Arauan nation." *Id.* at 6, 14. He contends that he is, accordingly, a victim of fraud, identity theft, forced identity, ethnic cleansing, and various forms of oppression, *id.* at 4, and he seeks an order directing the Commerce Department and Census Bureau to correct their records, $10,000,000 in damages "for each year of identity fraud" that he has endured, *id.* at

1

1516, 19, and a declaration of his "right to plenipotentiary protections as provided by international law," *id.* at 22.

Defendants moved to dismiss Plaintiff's amended complaint, Dkt. 9, and the Court directed that Plaintiff file an opposition to that motion, Dkt. 10. Rather than respond to the substance of Defendants' arguments, however, Plaintiff filed what he referred to as a "Rule 15 Response," but which was, in fact, simply a second amended complaint. Dkt. 12. Because Plaintiff filed that second amended complaint without Defendants' consent or leave of the Court, Defendants moved to strike. Dkt. 14. The Court, in turn, construed Plaintiff's "Rule 15 Response" as a motion for leave to amend and treated Defendants' motion to strike as an opposition to that motion. Min. Order (Feb. 27, 2025). Plaintiff subsequently filed a reply in support of his motion for leave to amend. Dkt. 16. Although the Court cautioned Plaintiff that Defendants' motion to dismiss remained pending and that, if he failed to respond, the Court might treat the motion as conceded or might dismiss the case for failure to prosecute, Min. Order (Feb. 27, 2025), Plaintiff did not timely respond to Defendants' motion to dismiss. He has, however, filed a motion for leave to file a third amended complaint, Dkt. 17, which seeks to join additional parties, and a motion to take judicial notice of administrative facts, Dkt. 18, which, in substance, responds to Defendants' motion to dismiss.

For the reasons explained below, the Court will **GRANT** Defendants' motion to dismiss, Dkt. 9, and will **DENY** Plaintiff's motions for leave to amend, Dkt. 12, Dkt. 17, as futile. The Court will **DENY** Defendants' motion to strike, Dkt. 14, as moot.

## I.   BACKGROUND

Plaintiff identifies as a tribal and national citizen of the Maipuri Arauan Nation of the Americas. Dkt. 7 at 3 (Am. Compl.). He filed this action on July 10, 2024, Dkt. 1, and filed an

amended complaint on November 13, 2024, Dkt. 7, seeking to "resolve issues related to [Plaintiff's] status and rights as a citizen of the Maipuri Arauan Nation," *id*. at 4.  Although far from a picture of clarity, Plaintiff's amended complaint appears to allege that Defendants violated the Alien Tort Statute, the U.S. Constitution, international law, and the common law by misclassifying him as "Black" rather than "American Aborigine."  *Id.* at 3.

Pointing to a letter dated February 6, 2015 from the Office of Inspector General of the United States Department of Commerce ("Inspector General"), Plaintiff alleges that the "Inspector General agreed that fraud had been committed against [him] and ordered the [United States Commerce Department and Census Bureau] to make changes and adjust their records related to the identity of [Plaintiff]."  *Id.*  Plaintiff, however, also attaches a copy of that letter to his amended complaint, and the letter merely notes that, "[a]fter careful consideration, [the Office of the Inspector General] decided to refer [his] allegations(s) to management officials at the U.S. Census Bureau and have requested that they take any action they deem appropriate." Dkt. 7-1 at 36.  Plaintiff alleges that despite this letter, the Census Bureau has failed to "adjust[] their records to reflect" Plaintiff's status as an "American Aborigine as declared in [his administrative] complaint."  Dkt. 7 at 3.

Plaintiff also alleges that Defendants have committed "crimes against humanity [by] denying and interfering with [his] rights to access plenipotentiary protections, as provided by [Plaintiff's] nations representatives and the laws of the United States of America."  *Id.* at 4.  He claims that Defendants engaged in "Constructive Fraud, Identity Theft, Forced Identity as a means to suppress and oppress, Unlawful Conversion, Economic Deception, and Ethnic Cleansing" in violation of his First, Fourth, Fifth, and Fourteenth Amendment rights.  *Id*.  And he claims that Defendants committed various torts in violation of international law, including

3

"unlawful possession of human beings to be used as human capital, as described in U.S. President Bill Clinton'[s] Executive Order 13037, . . . [v]iolations of United Nations International Covenant Convention on Political and Civil Rights, . . . Conspiracy to deprive rights, Negligence, Intentional, and Negligent Infliction of Emotional Distress causing irreparable mental injury." *Id*. at 5.

Plaintiff seeks an adjustment in federal records for the claims against the Department of Commerce and Secretary Raimondo, *id*. at 19, and a "[d]eclaration of [Plaintiff's] right to plenipotentiary protections as provided by international law and awarding such other and further relief, both special and general, at law or in equity, as the Court may deem just and proper," *id*. at 22. He also seeks monetary relief of $10,000,000 per year "for each year of identity fraud" related to the claim against the Census Bureau. *Id*. at 15–16.

Shortly after Plaintiff filed his amended complaint, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 9. The Court, in turn, issued a *Fox/Neal* order, directing Plaintiff to respond to the motion on or before January 17, 2025. Dkt. 10. Plaintiff sought an extension of time to respond, Dkt. 11, and the Court granted that motion, extending his time to respond to February 15, 2025, Min. Order (Jan. 16, 2025). On February 16, Plaintiff filed his response, but rather than address the arguments raised in Defendants' motion, Plaintiff merely asserted a right to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B); asserted that he "can fix the problems the [Defendants] identified in the motion" by filing an amended complaint; and asserted that "[t]he amended complaint automatically moots a pending motion to dismiss in most circuits." Dkt. 12 at 4. The remainder of his response, then, took the form of a putative, second amended complaint. *Id.* at 4–23. That putative pleading added new parties, dropped the United States as a

4

party, and revised Plaintiff's substantive averments while maintaining the same overall theory of his case. *Id.*

Defendants, in response, moved to strike the second amended complaint, noting that Plaintiff had already amended his pleading once as permitted under Federal Rule of Civil Procedure 15(a)(1)(B) and that Plaintiff was not entitled to file a second, amended complaint without Defendants' "written consent" or leave of the Court, Fed. R. Civ. P. 15(a)(2). Dkt. 14 at 3. Giving Plaintiff the benefit of the doubt, however, the Court construed his response, Dkt. 12, as a motion for leave to file an amended complaint, and it construed Defendants' motion to strike as an opposition to that motion, arguing that the amendment was futile. Dkt. 14. The Court ordered Plaintiff to file a reply brief in support of his motion for leave to amend on or before March 14, 2025. Min. Order (Feb. 27, 2025). The Court also cautioned Plaintiff that Defendants' motion to dismiss remained pending and that if he did "not respond to that motion on or before March 14, 2025, the Court may treat the motion as conceded, may decide the motion without the benefit of Plaintiff's views, or may dismiss the action for failure to prosecute." *Id.* On March 24, 2025, Plaintiff filed his (untimely) reply in support of his motion to amend, Dkt. 16.

Finally, on May 21, 2025, Plaintiff filed what the Court will construe as a motion for leave to file a third amended complaint, adding "two California state officials as defendants," Governor Newsom and Director of Public Health Erica Pan. Dkt. 17 at 1. Although that motion asserts that these additional defendants are necessary parties, a separate filing—Plaintiff's Judicial Notice of Adjudicative Facts—asserts that the California Department of Public Health has declined "to correct" the challenged Census Bureau classification of Plaintiff's racial identity

in violation of California law and the Alien Tort Act, jus cogens, and Plaintiff's civil rights. Dkt. 18 at 4–5.

## II. ANALYSIS

Where, as here, the plaintiff is proceeding *pro se*, the Court will hold his pleadings "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). But "a *pro se* plaintiff still bears the burden to establish subject matter jurisdiction over the case," *Price v. College Park Honda*, No. 05-cv-0624, 2006 WL 1102818, at *6 (D.D.C. Mar. 31, 2006), including demonstrating that he has "standing [to pursue] each claim" raised and to pursue "each form of relief" sought, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). At the motion to dismiss stage, a challenge to the plaintiff's standing "may take one of two forms"—it may pose a facial challenge to the plaintiff's jurisdictional allegations, or it may pose a factual challenge based on evidence outside the bounds of the pleadings. *Hale v. United States*, No. 13-cv-1390, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015). Here, Defendants raise a facial challenge, which requires the Court to consider whether the complaint alleges facts sufficient to establish subject-matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Owner-Operator Indep. Drivers Ass'n v. Dep't of Transp.*, 879 F.3d 339, 346–47 (D.C. Cir. 2018).

To survive a motion to dismiss, the plaintiff must plausibly allege the "three elements" that comprise the "irreducible constitutional minimum of standing": injury in fact, causality, and redressability. *Lujan*, 504 U.S. at 560–61. That is, the plaintiff must plausibly allege (1) a "concrete," "particularized," and "actual or imminent" "invasion of a legally protected interest" that is (2) "fairly traceable to the challenged action of the defendant" and (3) "likely" to be "redressed by a favorable decision." *Id.* at 560–61 (quotation marks and citations omitted);

*Humane Soc'y of U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015).  In this posture, the Court must accept the factual allegations of the complaint as true, *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006), but also assess the "plausibility" of the plaintiff's standing allegations in light of the relevant context and the Court's "judicial experience and common sense," *Humane Soc'y of U.S.*, 797 F.3d at 8 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

In some cases, moreover, a complaint is "so attenuated and unsubstantial as to be absolutely devoid of merit," thus leaving the court without jurisdiction.  *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (quoting *Newburyport Water Co. v. Newburyport*, 193 U.S. 561, 579 (1904)).  Fanciful or conspiratorial allegations, for example, fail to raise a "federal question suitable for decision." *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting *Best v. Kelly*, 39 F.3d 328, 330 (D.C.Cir.1994)); *see also Roum v. Bush*, 461 F. Supp. 2d 40, 46 (D.D.C. 2006) ("Complaints that are comprised of 'fanciful claims' and 'bizarre conspiracy theories' are generally subject to dismissal on that basis." (quoting *Bestor v. Lieberman*, No. 03-cv-1470, 2005 WL 681460, at *1 (D.D.C. Mar. 11, 2005)).  Similarly, where the Court is unable to discern any conceivable federal cause of action or other jurisdictional hook, the Court must dismiss the case for lack of jurisdiction.

Alternatively, where a complaint is overly vague or fails to identify any plausible basis for granting relief, a court may conclude that the complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or failure to set forth "a short and plain statement of the grounds for the court's jurisdiction" or a "claim showing that the pleader is entitled to relief" under Federal Rule of Civil Procedure 8(a).  Rule 12(b)(6) is designed to "test[] the legal sufficiency of a complaint*.*" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

7

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As the Supreme Court has explained, a court need not accept as true any "legal conclusion couched as a factual allegation," "naked assertion[ ] devoid of further factual enhancement," or "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (cleaned up). Rule 8(a), in contrast, does not focus on the legal sufficiency of the plaintiff's claims but, rather, on fair notice and judicial efficiency. The rule is designed to ensure that the defendant is "able to discern what a plaintiff is alleging in order to know how to defend against the claims," *Watkins v. Dep't of Justice*, No. 23-cv-766, 2024 WL 4362166, at *2 (D.D.C. Sept. 30, 2024), and to ensure that the Court can fairly and efficiently identify and address whether the complaint complies with Rule 12(b).

### A.

As an initial matter, the Court notes that Plaintiff has placed his eggs in one basket. Despite repeated warnings from the Court, Plaintiff did not timely respond to Defendants' long-pending motion to dismiss. Plaintiff appears to concede the legal insufficiency of his amended complaint, merely asserting that he can, if permitted, fix those flaws in a second (or third) amended complaint. Although the Court might reasonably dismiss Plaintiff's amended complaint on that basis alone, the Court will give Plaintiff, who is proceeding *pro se*, the benefit of the doubt, and will consider the legal sufficiency of his amended complaint along with the sufficiency of his proposed, second and third amended complaints, Dkt. 12, Dkt. 17, and his motion to take judicial notice of adjudicative facts, Dkt. 18, together in an effort to determine

whether any plausible basis exists to proceed based on the allegations set forth in any of those documents.

**B.**

None of the four complaints that Plaintiff has filed in this action alleges facts sufficient to establish Article III standing. As explained above, a plaintiff must allege facts that, if proven, would demonstrate that he has, or will imminently, suffer a concrete injury as a result of the challenged action and that a favorable decision would redress his injury. As far as the Court can discern, the action that Plaintiff challenges is the Census Bureau's failure to amend its records accurately to reflect his racial and ethnic identity as American Aborigine and as a member of the Maipuri Arauan Nation, and, in his more recent filings, the failure of the California Department of Public Health to correct its records. It is far from evident, however, what (if any) concrete injury in fact that Plaintiff has suffered due to this alleged omission.

He asserts in conclusory and vague terms, for example, that the alleged "misclassification has caused [him] to be denied his indigenous identity," has "excluded [him] from tribal rights," and has "subjected [him] to systemic discrimination." Dkt. 18 at 6. He asserts that Defendants' actions have "left [him] fearful of government enacted commercial and economic schemes of constructive fraud, identity theft and ethnic cleansing of [his] right to recognized in [his] true capacity as American aborigine," *id.*, and have "[disenfranchised]" him by incorrectly skewing "the ratios of demographics of the states" that are used to allocate government funds and programming, *id.* at 8. He asserts that these actions have also "barred [him] from the pursuit of happiness in his homeland," have prevented him from "using his tribal name," and have "barred [him] from opening a bank account." *Id.* at 9. And, finally, he asserts that these

9

misclassifications have subjected him to taxation, even though "he has an 'Indian not Taxed' status." *Id.*

None of these allegations suffices to aver a cognizable injury in fact for purposes of Article III.  To allege an injury in fact, a plaintiff must identify some "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).  An injury is "concrete" if it is "direct, real, and palpable—not abstract." *Pub. Citizen, Inc. v. NHTSA*, 489 F.3d 1279, 1292 (D.C. Cir. 2007).  Here, many of Plaintiff's alleged injuries, such as his loss of identity and fear of government schemes to defraud, are too abstract to support standing.  Others are insufficiently particularized or nonspeculative, such as any (extraordinarily) remote possibility that his misclassification might affect the allocation of government benefits based on demographic ratios.  And still others, such as his alleged inability to open a bank account or his loss of "Indian Not Taxed" status are too conclusory and are unsupported by any factual allegations that back up those conclusory allegations.  *See Iqbal*, 556 U.S. at 678.

Plaintiff's claims are similar to those at issue in *Angeni v. U.S. Department of Commerce*, 24-cv-2006, 2024 WL 4582972, at *1 (D.D.C. Oct. 25, 2024), where, as here, the plaintiff alleged that the Census Bureau violated the Alien Tort Statute and the Constitution by misclassifying the plaintiff "as 'Black' rather than 'American Aborigine.'"  As here, the plaintiff sought "$10,000,000 a year" in damages and "an order direct[ing] the Bureau to correct its records." *Id.*  And, as here, the Court concluded that it lacked Article III jurisdiction because the plaintiff had not alleged, as required by *TransUnion*, 594 U.S. at 413, any "concrete harm [that] followed from the Census Bureau's misclassification of her." *Id.* at 2.  The same holds true here;

10

Plaintiff has not alleged that the Census Bureau shared his information or that any concrete harm resulted from the alleged misclassification.

The Court, accordingly, concludes that Plaintiff's amended complaint, as well as his proposed second and third amended complaints, fail to allege facts sufficient to sustain the Court's jurisdiction, even at this preliminary stage of the proceeding. *See Lujan*, 504 U.S. at 561.

## C.

To the extent Plaintiff seeks to recover damages, moreover, he fails to identify a waiver of sovereign immunity that would permit him to proceed against either the United States or the State of California. Sovereign immunity is jurisdictional in nature and protects the federal government, its agencies, and its employees acting in their official capacity from suit, *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994), as well as the states and state agencies, *see College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999).

Here, Plaintiff argues that the Alien Tort Statute "provides jurisdiction for violations of international law, including violation of peremptory norms such as the prohibition against racial discrimination, forced identity, and cultural genocide" and that "[their] norms override sovereign immunity under international law and are actionable in federal courts." Dkt. 18 at 5. For support, Plaintiff cites the Second Circuit's decision in *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980). Neither the United States nor any state, however, was a party to that action, and, accordingly, the Second Circuit says nothing about their immunity from suit. The D.C. Circuit's decision in *Industria Panificadora, S.A. v. United States*, in contrast, recognized that the Alien Tort Statute "does not provide a waiver of sovereign immunity." 957 F.2d 886, 887 (D.C. Cir. 1992) (affirming district court decision dismissing action for lack of jurisdiction). Plaintiff identifies no authority to the contrary.

11

Plaintiff's common law tort claims against Defendants also fail because the waiver of sovereign immunity contained in the Federal Tort Claims Act ("FTCA") is limited to the United States and does not extend to agencies or government officials sued in their official capacity. *See Seitu v. Rutherford*, No. 96-cv-575, 1997 WL 122919, at *1 (D.D.C. Mar. 12, 1997) ("[T]he United States is the only proper party defendant in actions brought under the FTCA."). Moreover, to the extent that the complaint might be construed to allege an FTCA claim against the United States, the Court lacks jurisdiction over that claim because Plaintiff has not alleged that he has exhausted his administrative remedies by "first present[ing] the claim to the appropriate Federal agency." 28 U.S.C. § 2675; *see also Leji v. Dep't of Homeland Sec.*, No. 15-cv-387, 2015 WL 1299361, at *2 (D.D.C. Mar. 17, 2025). The exhaustion requirement is jurisdictional. *See Abdurrahman v. Engstrom*, 168 Fed. App'x 445 (D.C. Cir. 2005) (per curiam) (affirming the district court's dismissal of unexhausted FTCA claim "for lack of subject matter jurisdiction"); *accord Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 2007).

The Court also lacks jurisdiction over Plaintiff's constitutional claims. Constitutional claims for money damages against the United States "are barred by sovereign immunity." *Benoit v. U.S. Dep't of Agriculture*, 608 F.3d 17, 20 (D.C. Cir. 2010). Here, Plaintiff asserts a host of constitutional claims but fails to identify any applicable waiver of sovereign immunity.

## D.

Finally, the Court lacks jurisdiction over those portions of Plaintiff's complaint that are "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans*, 415 U.S. at 536–37 (1974) (internal quotation marks and citation omitted). His contention that Defendants have committed "[c]rimes against humanity" that "have no statute of limitations and [that] provide no

immunity," Dkt. 12 at 10, or have committed acts that constitute a "breach[] of jus cogens norms," *id.* at 19, are so far-fetched that they lie beyond the Court's jurisdiction. Moreover, even if the Court were able to reach the merits of Plaintiff's claims, it would conclude that his complaints fail to satisfy the dictates of Federal Rules of Civil Procedure 8(a) and 12(b)(6). None of his complaints allege specific facts sufficient to provide Defendants and the Court with adequate notice of the operative facts and of why he is allegedly entitled to relief and, instead, merely "offer[] 'labels and conclusions,'" *Iqbal*, 556 U.S. at 678, that do not suffice to state a claim.

### III. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion to dismiss, Dkt. 9; Plaintiff's operative complaint, Dkt. 7, is **DISMISSED** for lack of subject matter jurisdiction; and Plaintiff's requests for leave to amend, Dkt. 12, Dkt. 17, are **DENIED** as futile. Defendants' motion to strike Plaintiff's Federal "Rule 15 Response," Dkt. 14, is **DENIED** as moot.

A separate order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: August 4, 2025